UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| **GEORGE WERNER DILLMANN,**<br><br>       Plaintiff,<br>v.<br><br>**BANK OF AMERICA, N.A., TERRY L. RHODES, in her capacity as Executive Director of the Florida Department of Highway Safety and Motor Vehicles, ROBERT KUYNOCH, in his capacity as Director of Division of Motorist Services, BRADLEY PERRY, in his capacity as Director of Bureau of Records, JOHN DOE 1 and JOHN DOE 2,**<br><br>       Defendants. | **CASE NO.:**<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff GEORGE WERNER DILLMANN, for his Complaint against defendants BANK OF AMERICA, N.A., TERRY L. RHODES, in her capacity as Executive Director of the Florida Department of Highway Safety and Motor Vehicles, ROBERT KUYNOCH, individually and in his capacity as Director of Division of Motorist Services, BRADLEY PERRY, in his capacity as Director of the Bureau of Records, JOHN DOE 1 and JOHN DOE 2, alleges as follows:

### INTRODUCTION

1.      This is an action brought pursuant to the Driver Privacy Protection Act, 18 U.S.C. §2721 *et seq.* (the "DPPA") and pursuant to 42 U.S.C. §1983 to recover compensatory damages and/or liquidated damages,

1

punitive damages, and reasonable attorney's fees and other litigation costs. The action arises out of the disclosure by the Florida Department of Highway Safety and Motor Vehicles ("DHSMV") of personal information and highly restricted personal information about plaintiff to defendant Bank of America, N.A. ("BofA"), in violation of the DPPA, and the actions of BofA in obtaining that personal information and further disclosing it in violation of the DPPA.

2. As is described herein, the unlawful chain of events began when plaintiff, in two separate transactions, renewed his Florida driver's license and his Florida recreational vehicle registration sticker online on the DHSMV website. After receiving his license but not his sticker, and after failed attempts to rectify the situation with the DHSMV, he disputed the charge made to his credit card for that sticker. To investigate the dispute, plaintiff's bank in Austria contacted BofA (which apparently acts as agent for the DHSMV to process credit card transactions through the DHSMV website). BofA, in turn, apparently contacted the DHSMV, ostensibly for documentation of the credit card transaction. In response, the DHSMV disclosed to BofA details from plaintiff's motor vehicle record, including many items of personal information and highly restricted personal information (as defined by law). The disclosure of this information was forbidden by law and was completely irrelevant to determining the propriety of the charge to plaintiff's credit card. In turn, BofA disclosed this unlawfully obtained information to plaintiff's bank.

3. Plaintiff seeks relief pursuant to the DPPA and 42 U.S.C. §1983 for the unlawful dissemination of his personal information.

## PARTIES

4. Plaintiff, George Werner Dillmann, is a citizen of Austria and of the United States. He resides in and is domiciled in in Clearwater, Florida, within this judicial district.

5. Upon information and belief, defendant Bank of America, N.A. ("BofA") is a national banking association organized under the National Banking Act., which has a principal address of 100 North Trexon Street, Charlotte, NC.

6. Pursuant to F.S. 48.193, this Court may exercise personal jurisdiction over BofA because BofA operates, conducts, engages in or carries on a business or business venture in the states and has committed a tortious act within the state.

7. Pursuant to 28 USC 1331 and 28 USC 1391, jurisdiction is proper in the Middle District of Florida on the grounds that the claims arise under the laws of the United States and the Middle District of Florida is where a substantial part of events or omissions giving rise to the claims occurred.

8. Defendant Terry L. Rhodes is the Executive Director of the Florida DHSMV and is sued in her official capacity.

9. Upon information and belief, Ms. Rhodes is a resident of the state of Florida.

10. Defendant Robert Kuynoch is the Director of the Division of Motorist Services of DHSMV and is sued in his official capacity.

11. Upon information and belief, Mr. Kuynoch is a resident of the state

of Florida.

12. Defendant Bradley Perry is the Director of the Bureau of Records of DMS and is sued in his individual capacity and in his official capacity.

13. Upon information and belief, Mr. Perry is a resident of the state of Florida.

14. Upon information and belief, defendant John Doe 1 is an individual whose identity is presently unknown, and who is an employee or contractor of DHSMV of a division or bureau thereof.

15. Upon information and belief, John Doe 1 is a resident of the state of Florida.

16. Upon information and belief, defendant John Doe 2 is an individual whose identity is present unknown, and who is an employee or contractor for BofA.

17. The residence of John Doe 2 is presently unknown.

## **BACKGROUND**

18. The DPPA was included as part of the omnibus crime legislation passed by Congress in 1993, known as the Violent Crime Control and Law Enforcement Act of 1993. Senator Barbara Boxer, one of the DPPA's Senate sponsors, described several well-publicized incidents in which criminals had used publicly available motor vehicle records to identify and stalk their victims. Those incidents included:

    a. The murder of actress Rebecca Schaeffer in California by a man who had obtained Schaeffer's address from California's

        Department of Motor Vehicles;

b.    Home invasion robberies by a gang of Iowa teenagers who identified their victims by copying the license numbers of expensive automobiles and used those license numbers to obtain the addresses of the vehicle owners from the Iowa Department of Transportation; and

c.    The Arizona murder of a person whose home address was identified from the Arizona Department of Motor Vehicles.

19.    Senator Boxer also explained the ease with which a California stalker had obtained the addresses of five persons by copying their license numbers and requesting their addresses from the California Department of Motor Vehicles. Barbara Boxer (CA), *Congressional Record* 139 (1993) p. 29466.

20.    Senator Boxer explained that, prior to the passage of DPPA, in "34 States, someone [could] walk into a State Motor Vehicle Department with your license plate number and a few dollars and walk out with you name and home address." *Id.*

21.    Representative James Moran, a sponsor of unenacted companion legislation, noted "[v]ery few people realize that by registering their car or obtaining a driver's license through the DMV, they are surrendering their personal and private information to anyone who wants to obtain it. When informed that such information can be so easily obtained, most licensees are shocked and angry. According to a survey released by the National Association to Protect Individual Rights, 92 percent of Americans believe that the DMV

should not sell or release personal data about them without their knowledge and approval." James P. Moran (VA), Extension of Remarks, *Congressional Record* 139 (1993) p. 27327.

22. The DPPA, at 18 U.S.C. §2721(a), makes it unlawful for any state department of motor vehicles, and any officer, employee, or contractor thereof, to knowingly disclose or otherwise make available to any person or entity personal information (as defined in 18 U.S.C. §2725(3)) or highly restricted personal information (as defined in 18 U.S.C. §2725(4) obtained by the department in connection with a motor vehicle record, with the exception of certain specifically described permissible uses.

23. The DPPA further provides, at 18 U.S.C. §2724(a), that a person who knowingly obtains, discloses, or uses personal information from a motor vehicle record, for a purpose not permitted under the DPPA shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

24. The remedies provided in U.S.C. §2724(b) include actual damages, but not less than liquidated damages in the amount of $2,500, punitive damages upon proof of willful or reckless disregard of the law, and reasonable attorneys' fees and other litigation costs reasonably incurred.

25. The state of Florida enacted Fl. Stat. §119.0712, *et seq.* to protect against disclosure of personal information contained in motor vehicle records. Recognizing the seriousness of unauthorized requests and disclosures of such information, any person who uses or releases any information contained in the

Driver and Vehicle Information Database for a purpose not specifically authorized by law commits a noncriminal infraction, punishable by a fine not exceeding $2,000. (Fl. Stat. §119.0712(2)(e).) Moreover, any person who willfully and knowingly violates any provision of Chapter 119 of the Florida Statutes, commits a misdemeanor of the first degree.

26. The gravity of misuse of personal information has been recognized by many states in the United State, including Florida, as well as by the countries of the European Union, in the form of the General Data Protection Regulation ("GDPR"). Under certain circumstances, the GDPR protects citizens of the European Union ("EU") who—like plaintiff—reside in the United States, and it is well recognized that major U.S. businesses and financial organizations such as BofA must comply with the GDPR even without any physical location in the EU. Violations of the GDPR carries with it fines of up to €20,000,000 (approximately $22,628,000) or 4% of total revenue, whichever is greater. Indeed, in or about July 2021, Amazon was fined $877,000,000 for violating the GDPR. The stiffest penalties are usually imposed upon financial institutions for their failure to provide sufficient technical and organization measures to ensure information security. For example, Banca Transilvania SA was fined 100,000 Euro for failing to take sufficient measures to ensure that any person acting under its authority with access to personal data treated that data appropriately.

**Count I**
**Against Defendants Terry Rhodes, Robert Kuynoch, and Bradley Perry for violation of the DPPA**

27.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 26 hereinabove.

28.     Plaintiff is the holder of a Florida driver's license, which license constitutes a "motor vehicle record" and/or an "identification card" referred to in the DPPA, 18 U.S.C. §2725(1).

29.     Plaintiff is the owner of a recreational vehicle home registered in Florida, for which there is a "motor vehicle title" and "motor vehicle registration" referred to 18 U.S.C. §2725(1).

30.     Plaintiff's Florida driver's license, motor vehicle title, and motor vehicle registration all contain "personal information" and "highly restricted personal information" concerning plaintiff, within the meaning of 18 U.S.C. §2725(3) and §2725(4). The personal information and/or highly restricted personal information contained in plaintiff's records include, among other things, plaintiff's name, address, driver identification number, photograph, medical/disability information, social security number, and additional information related to plaintiff. This information is referred to herein as "Personal Information" and "Highly Restricted Personal Information," as the case may be.

31.     On or about November 23, 2018, plaintiff visited the website of the DHSMV and renewed his Florida driver's license. At the same time, in a separate transaction, he renewed his vehicle registration. At that time, he entered his Visa credit card information for the total required fee of $92.35.

32. Plaintiff's Visa credit card was issued to him by Card Complete Service Bank AG ("CCSB"), in Vienna, Austria. CCSB charged plaintiff's account the total fee of $92.35.

33. Thereafter, plaintiff received in the mail his renewal license. However, he did not receive (and never has received) his registration sticker indicating the renewal of his vehicle registration.

34. Plaintiff contacted the DHSMV numerous times and advised them of the missing registration sticker. His attempts to obtain a replacement at no additional cost were unsuccessful. Accordingly, plaintiff notified CCSB and disputed that portion of the $92.35 charge attributable to renewal of his registration. That amount was $42.35.

35. Upon information, BofA acts as agent for the DHSMV in processing credit card transactions through the DHSMV website.

36. As part of their investigation into plaintiff's dispute, CCSB contacted BofA.

37. Upon information and belief, BofA in turn contacted the DHSMV, ostensibly for documentation of the credit card transaction by which plaintiff renewed his driver's license and vehicle registration.

38. On or about March 20, 2019, the DHSMV disclosed to BofA details from plaintiff's motor vehicle record maintained by the DHSMV (the "Disclosure"). The Disclosure contained many items of plaintiff's Personal Information and Highly Restricted Personal Information, including but not limited to plaintiff's photograph, social security number, driver identification

number, name, address, and medical/disability information.

39. The Disclosure did not fall within any of the permissible uses enumerated in 18 U.S.C. §2721(b).

40. Indeed, the Personal Information and the Highly Restricted Personal Information contained in the Disclosure was completely irrelevant to BofA's investigation of plaintiff's dispute and was not needed in order to investigate his dispute.

41. Defendants Rhodes, Kuynoch, and Perry, upon information and belief, acting under color of state law, knowingly authorized, directed, ratified, approved, acquiesced in, committed, permitted, or participated in, acts and practices in direct violation of the DPPA, whereby a DHSMV employee or contractor (John Doe 1) knowingly—without plaintiff's express consent—disclosed plaintiff's Personal Information and Highly Restricted Personal Information to BofA.

42. Defendants Rhodes, Kuynoch, and Perry, upon information and belief, actually knew, or reasonably should have known, that the Disclosure violated clearly established statutory rights of the plaintiff.

43. Defendants Rhodes, Kuynoch, and Perry, upon information and belief, acted willfully or in reckless disregard of the law.

44. The actions of defendants Rhodes, Kuynoch, and Perry, upon information and belief, violated the DPPA.

45. Plaintiff has been required to engage the services of the undersigned attorney to prosecute this action.

46. Pursuant to 18 U.S.C. §2724, defendants Rhodes, Kuynoch, and Perry are liable to plaintiff for actual damages, but not less than liquidated damages in the amount of $2,500, punitive damages, and reasonable attorneys' fees and all other costs associated with this litigation.

**WHEREFORE,** Plaintiff requests judgment against defendants Rhodes, Kuynoch, and Perry, jointly and severally, for actual damages, but not less than liquidated damages in the amount of $2,500, punitive damages, and reasonable attorneys' fees and all other costs associated with this litigation.

### Count II
### Against defendants Terry Rhodes, Robert Kuynoch, and Bradley Perry for violation of 42. U.S.C. §1983

47. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 26 hereinabove.

48. Title 42 U.S.C. §1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of an State of Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…"

49. The actions of defendants Rhodes, Kuynoch, and Perry, as described hereinabove, have subjected plaintiff to the deprivation of his rights as secured by the DPPA and are therefore in violation of 42 U.S.C. §1983.

50. As a result of the actions of defendants Rhodes, Kuynoch, and

11

Perry, plaintiff has sustained damages.

**WHEREFORE,** Plaintiff requests judgment against defendants Rhodes, Kuynoch, and Perry, jointly and severally, for compensatory damages, punitive damages, and reasonable attorneys' fees and all other costs associated with this litigation.

## Count III
## Against defendant John Doe 1 for violation of the DPPA

51. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 26 hereinabove.

52. Upon information and belief, defendant John Doe 1 is the DHSMV employee or DHSMV contractor who made the Disclosure, as described hereinabove.

53. Upon information and belief, defendant John Doe 1 actually knew, or reasonably should have known, that the Disclosure violated clearly established statutory rights of the plaintiff.

54. Defendant John Doe 1, upon information and belief, acted willfully or in reckless disregard of the law.

55. The actions of defendant John Doe 1 violated the DPPA.

56. Pursuant to 18 U.S.C. §2724, defendant John Doe 1 is liable to plaintiff for actual damages, but not less than liquidated damages in the amount of $2,500, punitive damages, and reasonable attorneys' fees and all other costs associated with this litigation.

**WHEREFORE**, Plaintiff requests judgment against defendant John Doe 1

for actual damages, but not less than liquidated damages in the amount of $2,500, punitive damages, and reasonable attorneys' fees and all other costs associated with this litigation.

## Count IV
### Against defendant John Doe 1 for violation of 42. U.S.C. §1983

57. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 26 hereinabove.

58. Title 42 U.S.C. §1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of an State of Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…"

59. Defendant John Doe 1 made the Disclosure to BofA under color of state law.

60. The actions of defendant John Doe 1 have subjected plaintiff to the deprivation of his rights as secured by the DPPA and are therefore in violation of 42 U.S.C. §1983.

61. As a result of the actions of defendant John Doe 1, plaintiff has sustained damages.

**WHEREFORE** Plaintiff requests judgment against defendant John Doe 1 for compensatory damages, punitive damages, and reasonable attorneys' fees

and all other costs associated with this litigation.

## Count V
## Against defendant BofA for violation of the DPPA

62.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 26 hereinabove.

63.    The DPPA, at 18 U.S.C. §2772(a) provides that "[i]t shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title."

64.    Defendant BofA obtained the Disclosure from the DHSMV ostensibly to address plaintiff's disputed credit card charge with respect to the DHSMV charge for renewal of his vehicle registration.

65.    The Disclosure did not fall within any of the permissible uses enumerated in 18 U.S.C. §2721(b).

66.    Indeed, the Personal Information and the Highly Restricted Personal Information contained in the Disclosure was completely irrelevant to BofA's investigation of plaintiff's dispute and was not needed in order to investigate his dispute.

67.    After unlawfully obtaining the Disclosure from the DHSMV, BofA then unlawfully disclosed that information to CCSB. Indeed, the Personal Information and Highly Restricted Personal Information was completely irrelevant to CCSB's investigation of plaintiff's dispute and there was no reason for BofA to disclose the information to CCSB.

68.     BofA violated 18 U.S.C. §2722(a) by obtaining the Disclosure from the DHSMV and also by disclosing it to CCSB.

69.     Pursuant to 18 U.S.C. §2724, defendant BofA is liable to plaintiff for actual damages, but not less than liquidated damages in the amount of $2,500, punitive damages, and reasonable attorneys' fees and all other costs associated with this litigation.

**WHEREFORE,** Plaintiff requests judgment against defendant BofA for actual damages, but not less than liquidated damages in the amount of $2,500, punitive damages, and reasonable attorneys' fees and all other costs associated with this litigation.

## Count VI
## Against defendant John Doe 2 for violation of the DPPA

70.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 26 hereinabove.

71.     Upon information and belief, defendant John Doe 2 is the BofA employee or BofA contractor who made the obtained the Disclosure from the DHSMV and who disclosed it to CCSB, as described hereinabove.

72.     Upon information and belief, defendant John Doe 2 actually knew, or reasonably should have known, that the obtaining the Disclosure and further disclosing it violated clearly established statutory rights of the plaintiff.

73.     Defendant John Doe 2, upon information and belief, acted willfully or in reckless disregard of the law.

74.     The actions of defendant John Doe 2 violated the DPPA.

75.     Pursuant to 18 U.S.C. §2724, defendant John Doe 2 is liable to plaintiff for actual damages, but not less than liquidated damages in the amount of $2,500, punitive damages, and reasonable attorneys' fees and all other costs associated with this litigation.

**WHEREFORE,** Plaintiff requests judgment against defendant John Doe 2 for actual damages, but not less than liquidated damages in the amount of $2,500, punitive damages, and reasonable attorneys' fees and all other costs associated with this litigation.

### Prayer for Damages

**WHEREFORE**, Plaintiff respectfully requests judgment against the defendants as set forth in each Count hereinabove, plus such other and further relief as the Court may deem just and proper.

### Jury Demand

Plaintiff demands a trial by jury on all issues so triable.

**DATED** this 3RD day of March, 2023.

    Respectfully submitted,

By:   */s/ Christopher DeCosta*
Christopher J. DeCosta, Esquire
Florida Bar No.: 271410
Mahshie & DeCosta, P.A.
1560 Matthew Drive, Suite E
Fort Myers FL 33907
Telephone:  (239) 931-7566
Facsimile: (239) 931-7560
Email: Eservice@md-lawfirm.com
       Chris@md-lawfirm.com
Secondary:  paige@md-lawfirm.com
       jamie@md-lawfirm.com